Curtis KIRKLAND, Plaintiff in Error,

v.

Othalene HENRY, Defendant in Error.

No. 36896.

Supreme Court of Oklahoma.

April 17, 1956.

Bassmann & Gordon, Claremore, for plaintiff in error.

Ralph B. Brainard, Claremore, for defendant in error.

PER CURIAM.

Defendant in error, Othalene Henry, as plaintiff, brought this action in the District Court of Rogers County against plaintiff in error, Curtis Kirkland, together with Gertrude Chapman and others, to quiet title in herself to an undivided one-half interest in a certain lot in the city of Claremore. One

Will Henry, owner of the property, died intestate, in February, 1932. The defendant, Gertrude Chapman, then the wife of the decedent, was the surviving spouse. As defendant she joined with plaintiff in error in an answer denying plaintiff's claim to title in the property by inheritance as the daughter of Will Henry. She died prior to the trial of the case.

There is no question but that Othalene Henry was born an illegitimate. The sole issue is whether the trial court erred by entering judgment determining Othalene Henry to have acquired the right of inheritance under 10 O.S.1951 § 55, which reads as follows:

> "The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court."

Plaintiff in error urges his claim of error under one proposition, asserting that the judgment of the trial court was contrary to law, particularly the above cited statute, and was not sustained by the evidence.

Defendant in error, who will be referred to hereinafter as plaintiff, assumed the burden imposed upon her as claimant to establish legitimation by producing evidence which may be summarized as follows: Will Henry had become a widower some time prior to 1930 and while living alone in the residence located on the property involved in this action employed Maybell Vann, mother of plaintiff to do housework for him; while so employed she conceived plaintiff from sexual relations with Will Henry; plaintiff was born January 15, 1930; at the time of the conception neither Maybell Vann nor Henry were married but at some time near the date of plaintiff's birth Henry married Gertrude Sneed, who was the Gertrude Chapman named as a defendant; during all times pertinent to the case Henry and plaintiff's mother resided within a few houses of each other on the same street in Claremore; plaintiff's mother lived with her parents before and after she was born; Henry came to visit many times after the plaintiff was born and made some sort of settlement with the parents and thereafter on three or four occasions came to plaintiff's home and placed two or three dollars in her hand, these gifts were made during the first two to six months of plaintiff's life; a neighbor testified that some time during 1932 when Gertrude Chapman, Henry's surviving spouse, was winding up the affairs of decedent's estate, she told him that she could not sell the property involved in the action because it was hers only so long as she lived there and if she died it went to plaintiff; plaintiff's uncle testified that Henry admitted to Maybell's parents that he was the father of plaintiff; a teacher in a public school of Claremore testified that on a car trip from Claremore to Tulsa, when plaintiff was approximately two years of age, Henry told a Mr. Jones in the presence of herself and Mrs. Jones that plaintiff was his baby and that he was going to take care of her; plaintiff testified that Henry died when she was about two; that she first came to know Gertrude Chapman at age five and at about age thirteen Gertrude Chapman told her of a request made by Henry that she help support plaintiff, but not having anything at that time she would give her something monthly if she were put on an old age pension; plaintiff also testified to Gertrude Chapman giving her small sums, all less than a dollar, on several occasions when plaintiff was some five or six years of age; and that she gave her flowers on Decoration Day to place on Henry's grave.

Plaintiff in error, a defendant in the case, bore the burden of the defense, producing evidence to prove that Henry had consistently denied paternity both to individuals and on one occasion publicly. Otherwise, the defense evidence was contradictory of public acknowledgment and reception of plaintiff into Henry's family with consent of his wife and treatment of plaintiff as a legitimate child.

While we find that the evidence produced by plaintiff was ample to establish

the fact that Will Henry was the father, we cannot agree that the evidence was otherwise sufficient to sustain the burden resting with plaintiff of establishing all elements of legitimation to comply with the statute cited above. That the burden was plaintiff's is established, see Thompson v. Thompson, 177 Okl. 437, 60 P.2d 615; In re Cravens' Estate, Okl., 268 P.2d 236; In re Lewis' Estate, 200 Okl. 352, 194 P.2d 174. The rule established in these cases and others of this jurisdiction may be stated to be, that to establish a claim of legitimation, claimant must establish illegitimacy, paternity, that the father publicly acknowledged claimant to be his child during minority, received claimant into his home with his wife's consent given with knowledge of illegitimacy, and treatment of claimant as legitimate.

There is no evidence in this case to establish any act of Henry performed during the time between the birth of plaintiff and his marriage to Gertrude Chapman, if in fact the marriage was after the birth, from which it can be said that Henry during that time acknowledged plaintiff as his child and sought to adopt her. We may exclude from the very outset any application of the rule set out in the case of In re Buffington's Estate, 169 Okl. 487, 38 P.2d 22, where we held that an unmarried father could under the facts of that case receive the child into the home of the father's aunt to substantiate the requirements of the statute. See also In re Gathings' Estate, 199 Okl. 460, 187 P.2d 981.

Our consideration then is limited to the factual situation existing during the time of Henry's marriage with Gertrude Chapman consisting of some two years prior to the father's death in 1932.

■■ We are of the opinion that the various acts relied upon did not accomplish the necessary requirements of the statute as to reception into the home and treatment as a legitimate child. In the Cravens' case, supra, under facts very similar to this case, we said that legitimation may be accomplished by a parent only by an open and notorious recognition of paternity and a general holding out to such parent's own family of the fact of parentage, coupled with such conduct as to make it plain to those who know him that there is a clear-cut intention the illegitimate child's civil and social status shall thereafter be that of a lawful child of the natural father. In paragraph two of the syllabus by the court in that case [268 P.2d 237] we pointed out that the portion of the statute providing for adoption of an illegitimate child by the father " * * * 'publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, in to his family, and otherwise treating it as if it were a legitimate child,' " requires the father to have held such child out to his relatives, friends, acquaintances and the whole world as his own.

■ In order to complete legitimation under the statute all of its provisions must be complied with. Such was our holding in Thompson v. Thompson, supra, and the rule has been so stated in other jurisdictions where similar statutes have been adopted and Thompson v. Thompson, supra, cited with approval. See In re Cook's Estate, 63 Ariz. 78, 159 P.2d 797, citing this case and cases from California.

There was a total lack of any evidence on plaintiff's behalf that Henry had received plaintiff into his home during his lifetime or that she had even visited there, and this even though Henry resided on the same street and only one or two houses removed from plaintiff's residence. While it is true Henry visited the child at the grandparents' home and placed small sums of money in her hand, there was nothing to indicate that such acts were or were not meant to constitute a public acknowledgment of plaintiff as his lawful child, and thereby endow her with both the civil and social status of such.

■ From a careful scrutiny of the entire record, we fail to find any substantial evidence, even if believed by the court, to establish that plaintiff had ever been received into the family of Will Henry, within the legal meaning of that term, or that he ever treated her as one would a legitimate child.

Plaintiff, as claimant, having failed to sustain the burden of proving all requisite elements of legitimation as required, cannot be found to be an adopted child under the

169

statute and therefore was not a legal heir of Will Henry. It follows that the judgment of the trial court insofar as it concludes plaintiff to be a legal heir to the estate of Will Henry and acquiring an undivided one-half interest in the property involved in this action, thereby, is erroneous.

Accordingly, the matter is remanded to the trial court with instructions to enter judgment consistent with the findings here expressed.

Reversed.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner J. W. Crawford and approved by Commissioners Jean R. Reed and James H. Nease, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

WILLIAMS, V. C. J., and DAVISON, HALLEY, BLACKBIRD, JACKSON and HUNT, JJ., concur.

CORN, J., dissents.