Bogan BROWN, Plaintiff in Error,

v.

Myrtle BROWN, Ruby Brown, now Hamilton, and Jo Ann Brown, a minor, Defendants in Error.

No. 38629.

Supreme Court of Oklahoma.

Oct. 11, 1960.

King & Wadlington, by Carloss Wadlington, Ada, for plaintiff in error.

James L. Clark, Coalgate, for defendants in error.

WELCH, Justice.

The defendants in error herein, Myrtle Brown, Ruby Brown, now Hamilton, and Jo Ann Brown, a minor, by Field Solicitor (U. S. Probate Attorney) her next friend, as plaintiffs filed petition in the county court of Coal County, Oklahoma, for determination of the heirs of Affason Brown, deceased Chickasaw Indian, claiming themselves to be the sole and only heirs. Thereafter Bogan Brown, plaintiff in error herein, filed his answer and cross-petition alleging that he was the illegitimate son who had been publicly acknowledged as such by the deceased.

The matter was tried by the county court which determined the defendants in error herein to be the sole and only heirs. Bogan Brown appealed from this judgment to the district court where a trial de novo was had and a judgment was rendered which affirmed the county court. It is from the latter judgment that plaintiff in error has appealed to this court.

Plaintiff in error argued only one proposition, that the judgment is contrary to the law and the evidence.

In presenting this argument it is his contention that the evidence was sufficient to prove a public acknowledgment by Affason Brown, that Bogan Brown was his own child. He relies principally upon his own testimony to the effect that Linton Brown, in the presence of Affason Brown, made the statement to him, "your daddy has come for you," and the testimony of the witness Joe Parks, who testified that upon several occasions he had heard Affason Brown refer to Bogan Brown as his son. The record reveals that a number of witnesses testified that Bogan was generally considered by themselves, members of the family, and citizens of the community as the son of Affason Brown. However, only Parks testified he had heard Affason refer to him as his son.

The evidence reveals that Bogan was born July 30, 1919, and lived in the home of Linton Brown until 1952. Linton Brown was a brother to Eddy Brown, who was Bogan's mother. She died in 1941, and Bogan was still living in the home of Linton Brown in 1952 when Affason asked him to come and live with him and his wife Myrtle, which he did for about one week. Bogan testified that Affason did spend some money on him once in a while, however, this testimony does not reveal when or how much.

Section 55, Title 10, O.S.1951, provides:

"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a

child adopted by regular procedure of court. * . * * "

■ The burden of proof to establish all of the elements of legitimation as required by the above section of our statutes is upon the claimant. The evidence must show the father to have held such child out to his relatives, friends, acquaintances, and the whole world as his own. In re Cravens' Estate, Okl., 268 P.2d 236, and Thompson v. Thompson, 177 Okl. 437, 60 P.2d 615.

. In the case of Hunter v. Hunter, 206 Okl. 573, 244 P.2d 1140, 1144, we said:

"While there is some evidence that he acknowledged to certain individuals that he was the father of the child, yet he never did so publicly. Also, the appellant's mother, and others, gave evidence of such public acknowledgment, and acceptance into her home while deceased purportedly lived with her in the alleged common-law marital relationship but such evidence, if true, was insufficient. * * * "

In Thompson v. Thompson, supra, wherein we construed Sec. 55, Title 10, O.S. 1941 which is now same title and section of 1951, O.S., we said [177 Okl. 437, 60 P.2d 616]:

"To establish their claim of legitimation under the above section, Mamie Thompson and George Thompson must sustain the burden of proof of the following elements: (1) Illegitimacy. That they are illegitimate children. (2) Paternity. That Thomas Thompson was their father. (3) Public acknowledgment. That he publicly acknowledged them as his own children. * * * (4) Reception into family with wife's consent. That they were received into his family with his wife's consent, given with knowledge of the illegitimacy. (5) Treatment as legitimate. * * * "

■ Thus we have heretofore construed the intent of the Legislature, as respects legitimation of an illegitimate child. The same may be accomplished by a parent only by an open notorious recognition of paternity, and a general holding out to such parent's own family of the fact of parentage, coupled with such conduct as to make it plain to those who know him that there is a clear cut intention that the illegitimate child's civil and social status shall thereafter be that of a lawful child of the natural father. In re Cravens' Estate, supra.

■ The record reflects that only one witness testified that deceased had acknowledged to him that Bogan was his son. All other witnesses, except Bogan, testified that he was generally considered by residents of the community as the son of deceased. This consideration does not appear to be based upon any statement made by deceased or by any manner in which he treated Bogan, but upon the fact that deceased and Bogan's mother were living in the home of one of her brothers who was a half-uncle of deceased, and were sleeping in the same bed together for some few years prior and up to the time of the birth of Bogan. This evidence does help to establish illegitimacy and paternity, but does not constitute any proof of public acknowledgment or treatment as a legitimate child. From the record we are unable to find any evidence that tends to prove the two latter mentioned elements. The evidence is conflicting as to the thinking of citizens of the community as to Bogan's paternity during the time he was a growing boy in the community.

■ From our search of the record we are unable to find wherein the judgment is clearly against the weight of the evidence, therefore the judgment of the district court will not be disturbed. In re Estate of McDade, 95 Okl. 120, 218 P. 532, and Burton v. Noahobi et al., 144 Okl. 49, 289 P. 335.

Affirmed.