518 P.2d 687

**Theodore LOPES, Plaintiff and Appellant,**

v.

**Shanna LOPES, Defendant and Respondent.**

**No. 13383.**

Supreme Court of Utah.

Jan. 16, 1974.

E. Barney ·Gesas and David S. Dolowitz, of Salt Lake County Bar Legal Services, Salt Lake City, for plaintiff-appellant.

William G. Shelton and J. Douglas Kinateder, Salt Lake City, for defendant-respondent.

CROCKETT, Justice:

Plaintiff, Theodore Lopes, initiated this action for a divorce against defendant, Shanna G. Lopes. She answered and counterclaimed seeking the divorce herself. She alleged that she is a fit and proper person to have the care, custody and control of a child to be born, and sought $65 per month support money, conceding reasonable rights and visitation to the plaintiff. Upon a trial to the court, of which there is no transcript of evidence brought here, the court granted the divorce and awarded each of the parties their own personal property. Neither party complains of that part of the decree.

The controversy here is an anomalous reversal of the usual contest. The plaintiff, Theodore Lopes, is seeking to have imposed upon himself the obligations of paternity and support of the child; whereas the defendant resists that adjudication and now apparently does not want any of his money or support. In its findings the trial court recited:

> That during the marriage there has been one child born to the defendant, Shanna Lopes. The *defendant Shanna G. Lopes testified that . . . said child is not the issue of the plaintiff herein . . . .. Counsel for the plaintiff objected* to the Court allowing said testimony by the defendant, and moved to strike said testimony. The Court denied counsel's motion and allowed the testimony to stand. The Court *finds by a preponderance of the evidence* that the child born of Shanna Lopes is not the offspring of the plaintiff herein. [Emphasis added.]

The plaintiff contends that the court committed two basic errors in making the just quoted finding: first, in applying the preponderance of the evidence standard in determining the issue of non-paternity; and second, in allowing the defendant mother to give testimony which would illegitimatize the child.

With respect to (1) above: the defendant in her brief concedes that the

correct rule as to the proof of non-paternity of a child born during wedlock is beyond a reasonable doubt,[1] and that the trial court erred in applying the preponderance of the evidence standard. She asks that the case be remanded with directions for the trial court to determine whether the evidence meets the correct standard. In view of the fact that both parties are seeking further proceeding, we willingly agree that this be done. When a new trial or further proceeding is ordered, it is our duty to pass upon questions of law which may be pertinent and helpful in arriving at a final determination of the case.[2] We therefore give attention to the second issue stated above.

 Closely related to the presumption that a child born to the wife during marriage is the legitimate offspring of herself and her husband is the limitation on the method of proof of non-paternity: that the spouses themselves may not give testimony which would tend to illegitimatize the child. This is known as the Lord Mansfield Rule.[3] Its genesis and wide acceptance arise out of the same considerations as the presumption of legitimacy: the importance of the integrity of the family; and the policy of giving the interests and welfare of children priority over those of warring adults.[4]

It requires but little reflection to appreciate the undesirable effects it would have upon family solidarity to permit the spouses to scandalize each other by accusations of immoral conduct concerning the conception of children born in the family. Of graver moment than the disgrace to themselves, it seems repugnant to one's sense of justice to allow them to stigmatize the innocent child, whose welfare and adjustment will be so crucially affected thereby during his whole lifetime. Yet he is in the anomalous position of being without voice or defense in a dispute in which there is often engendered a great deal of emotion and recrimination; and in which, however

1. We set forth the rule and the reasons for it in the case of Holder v. Holder, 9 Utah 2d 163, 340 P.2d 761; that case and rule was cited with approval in Hughes v. McCormick, 17 Utah 2d 372, 412 P.2d 613; see also Lanford v. Lanford, 151 Colo. 211, 377 P.2d 115.

2. See Rule 76(a), U.R.C.P.; Johnson v. Peterson, 18 Utah 2d 260, 420 P.2d 615.

3. Goodright v. Moss, 2 Cowp. 591, 98 Eng. Reprint 1257 (1777), wherein Lord Mansfield said: " . . . it is a rule founded in decency, morality, and policy that they [husband and wife] should not be permitted to say after marriage that the offspring is spurious; or especially the mother, who is the offending party." Example cases so stating this rule see: Esparza v. Esparza, 382 S.W.2d 162 (Tex.Civ.App.1964); Smith v. Smith, 268 Ala. 348, 106 So.2d 260; State v. Wade, 264 N.C. 144, 141 S.E.2d 34; and see Wigmore on Evidence, 3d Ed., Vol. VII, p. 363, et seq., citing numerous jurisdictions and listing cases following this rule.

4. E. g., see Kennedy v. State, 117 Ark. 113, 173 S.W. 842; and see 10 Am.Jur.2d 869, wherein the text states that: although not universally followed, the rule is established in most jurisdictions; citing numerous cases; also see 10 C.J.S. Bastards p. 32.

the issue may be resolved, cannot do other than have deeply scarring effects upon him.

It is those he looks to as parents, who should provide the love, nurture, and protection from the otherwise sufficient vicissitudes of life. If they do not have the sense of propriety and decency to restrain themselves from visiting their own difficulties and maladjustments upon the child, and thus pass them on to yet another generation, the law in its concern for the broader interests of society, and in its sense of justice in protecting the interests of the child, has wisely provided that restraint upon the parents in the Lord Mansfield Rule, leaving the proof of such facts where necessary to come from other sources.[5] It is for the reasons discussed herein that that rule has had such wide acceptance for so long a period of time, and that we give it our approval.[6]

This case is remanded for further proceedings concerning the status of child. The parties bear their own costs.

CALLISTER, C. J., and TUCKETT, J., concur.

HENRIOD, Justice (concurring).

I concur. Doing so I am constrained to say that in cases like this the children are not the bastards, but you know who.

ELLETT, JUSTICE (concurring and dissenting).

I concur in remanding the case, not for a new trial but only for the purpose of having the trial judge decide if he finds *beyond a reasonable doubt* that the plaintiff is not the father of the child.

As to the Lord Mansfield Rule to the effect that spouses may not testify to nonac-

---

5. Remarks in the briefs of matters not in the record before us, because there is no transcript, indicate that in this case, as it seems would be true in practically all cases, there should be no difficulty in such independent proof as to the paternity of this child.

6. We so state in awareness of the provisions of Rule 7 of the Rules of Evidence, and make these comments: that rule is a general statement of policy made without focus upon the particular problem here involved. Such generality should not be deemed to control in a specific situation where its effect would be to distort justice by subverting such a sound and well-established rule as that under consideration here. The parties affected, and the principle of law involved, are entitled to be considered upon their own merits as to reason, justice and policy. That in the adoption

of The Rules it was realized that in some instances it might be found unjust to regard such a generality as absolute and immutable is reflected in this statement of the committee's report and recommendation to the court, which was published as a preface to the rules:

It would of course be presumptuous to suppose that this is the final word to be said upon the law of evidence. *It is assumed that the court may* from time to time *deem it advisable to make additions*, changes or modifications.

Consistent with this, and most important, neither by the adoption of any rule, nor by any decision, should this court be permanently and irrevocably committed to error, but when in consideration of the interests of justice it plainly appears that an error has been made, it should be corrected.

cess so as to bastardize offspring born during coverture, I hold a view somewhat at variance with that of the prevailing opinion.

In Old England the system of government was based upon land ownership, and there was, therefore, great concern as to heirship. It was necessary to know with certainty who was the owner of land. In the United States the overwhelming preponderance of the law has been to the effect that neither husband nor wife could testify to nonaccess so as to bastardize the children born or conceived during coverture. However, the reasons given therefor are not convincing. It is claimed that proof of nonaccess (although a fact) would be unseemly and scandalous. Now, that is a peculiar reason for hiding the fact of the matter from the truth seeker at trial. Testimony by the husband that his wife has had sexual relations with every man in town can be given, and that is not a scandal of sufficient magnitude to silence his voice, but he is not permitted to say that he was in the jungles of New Guinea during the two years prior to the birth of his wife's child and that he never saw her during that period of time. That would be scandalous!

Another reason advanced is that to permit spouses to tell the truth would "shock our sense of right and decency," and hence the law will not permit it.

While the parents may not testify so as to give the truth to the judge because the truth would shock our sense of right and decency, nevertheless a husband who knows may get out on the street corner and proclaim to all the world that he had no access to his wife during the time of conception. He may even bear his testimony to that fact to all members of his church, his club, and his political party, but he cannot tell it to the judge whose duty it is to find what the true fact of the matter is.

I could agree with the reasoning of the prevailing opinion as to the "effects it would have upon family solidarity to permit the spouses to scandalize each other by accusations of immoral conduct concerning the conception of children born in the family" if the findings of the court would convince the husband that he in fact is the father of the child. However, if the father was not even permitted to testify, he cannot respect a rule of law that saddles him with a burden which he knows to be undeserved. No amount of findings and judgment made by a judge who refuses to listen to the testimony of one in possession of facts will ever be conducive to the solidarity of a family when the husband is forced into a galling situation like that. If the husband were permitted to give his testimony and the judge could weigh it and then with all relevant evidence before him

decide against the husband, the solidarity might be enhanced because the judge would not rule against the husband unless there was contradictory evidence on the matter. The husband might then respect the judgment, for he could see that there was a reason for the ruling.

Besides the reasons above given, our Rules of Evidence (effective since July 1, 1971) have put the matter to rest. Rule 7 provides:

Except as otherwise provided in these rules or the statutes of this state, (a) every person is qualified to [be] a witness, and (b) no person has a privilege to refuse to be a witness, and (c) no person is disqualified to testify to any matter, and (d) no person has a privilege to refuse to disclose any matter or to produce any object or writing, and (e) no person has a privilege that another shall not produce any object to writing, and (f) all relevant evidence is admissible.

There is no statute which precludes the evidence received by the trial court in this matter, and there is no provision in the Rules of Evidence to prevent it. Therefore, the evidence given by the parties to this lawsuit is competent and was properly received by the court. In my opinion there was no error in receiving the testimony of both parties.