**Patricia M. MACE, Plaintiff and Respondent,**

v.

**Richard WEBB, Defendant and Appellant.**

**No. 16364.**

Supreme Court of Utah.

June 26, 1980.

STEWART, Justice:

This appeal is from an order of the district court requiring the defendant to pay child support for plaintiff's minor child and declaring that the defendant, who was shown by blood tests not to be the child's natural father, had adopted the child by acknowledgment. We reverse.

In June 1973 plaintiff, an unmarried woman, gave birth to a son. The defendant, who had been living with her for several months, assumed responsibility for the medical expenses of the birth. Defendant signed the birth certificate as the child's father, and the child was given defendant's surname. The couple continued living together until the latter part of 1975. The child has since remained in his mother's custody. Defendant has married and currently resides with his wife.

In November 1974 the plaintiff filed an action seeking child support from defendant. The parties stipulated to a temporary support order in 1976, and defendant made support payments pursuant to that order. In March 1978 defendant answered plaintiff's complaint, denied paternity, and counterclaimed for all sums paid for the support of plaintiff's child. Blood tests performed

pursuant to court order conclusively established that defendant is not the natural father of the child. The court below nevertheless found that defendant had adopted the child by acknowledgment pursuant to § 78–30–12 U.C.A. (1953), as amended, and that defendant was and is responsible for the support and maintenance of plaintiff's son. Judgment was entered on plaintiff's complaint in favor of plaintiff, and defendant's counterclaim was dismissed.

Section 78–30–12 provides as follows:

Adoption by acknowledgment.—The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption.

In its conclusions of law the trial court, after holding that the child had been adopted by acknowledgment, stated:

The term "father" as used in Section 78–30–12 of the Utah Code Annotated (1953) includes and means the "putative" father or the individual who is believed to be, who believes himself to be and who had the opportunity to be, the child's natural father regardless of whether he in fact is the actual natural father of said child.

This legal conclusion was the basis of the court's order, since the court's findings state that defendant was not the biological father of plaintiff's child. We hold the court's definition of "father" as used in § 78–30–12 to be erroneous.

This Court has not previously decided a case under the acknowledgment statute where evidence proved the alleged father not to be the natural father. The statute has been applied to situations involving illegitimate births where parentage was not in dispute. Although the title of the statute is given as "adoption by acknowledgment," it properly is characterized as a legitimation statute. *Slade v. Dennis*, Utah, 594 P.2d

898 (1979). The legislative purpose giving rise to this statute is to confer on an illegitimate child the civil and social status of a lawful child of the natural father. *Brown v. Brown*, Okl., 355 P.2d 1034 (1960). A child born out of wedlock may thus receive the same inheritance rights as the legitimate child. *In re Navarro*, 77 Cal.App.2d 500, 175 P.2d 896, 898 (1946), in considering § 230 of California's civil code, which is identical to our § 78–30–12, stated:

Section 230, supra, is not, strictly speaking, an "adoption" statute, but a "legitimation" one. In *Blythe v. Ayres*, 96 Cal. 532, 559, 560, 31 P. 915, 916, 19 L.R.A. 40, the court said that "The verb 'adopts,' as used in section 230, is used in the sense of 'legitimates,' and that the acts of the father of an illegitimate child, if filling the measure required by that statute, would result, strictly speaking, in the legitimation of such child, rather than in its adoption. *Adoption, properly considered, refers to persons who are strangers in blood; legitimation, to persons where the blood relation exists. . . ."* [Emphasis added.]

Thus, a father who "adopts" his child by acknowledgment makes that child legitimate.

The issue before the Court is whether the statue is applicable as to one who is not the father of the child born out of wedlock. Courts of other states have uniformly regarded legitimation statutes as applying only to acknowledgment of illegitimate children by their *biological* fathers. For example, in *In re Cook's Estate*, 63 Ariz. 78, 159 P.2d 797, 800 (1945), the court noted four requirements for legitimation under a statute similar to Utah's:

. . . it has been held that four things are essential under this section for the adoption of an illegitimate child by its father: (1) He shall be its natural father; (2) He shall have publicly acknowledged himself to be the father; (3) He shall have received the child into his family; (4) He shall have otherwise treated it as his legitimate child. [Citation omitted.]

In order to complete legitimation under this section all of its provisions must be complied with.

In *Clevenger v. Clevenger,* 189 Cal. App.2d 658, 11 Cal.Rptr. 707 (1961), the court faced the problem of defining the duty of support which a husband owes to his wife's illegitimate child whom the husband had acknowledged and treated as his own child. The wife stipulated that the husband was not the child's natural father. As in the instant case it was argued that the child had been legitimated by the husband's conduct. The court held that the argument was unsupportable under the relevant statutory provisions. It stated:

> Section 230 of the Civil Code providing that "The father of an illegitimate child" legitimates the child by acknowledging it as his own, receiving it into his family and otherwise treating it as a legitimate child, applies to such conduct only by the child's father. *Indeed, the cases [citations omitted] hold that as a condition to such legitimation the charged party must be the natural father. In view of the stipulation to the contrary in the instant case, section 230 of the Civil Code does not apply.* [Emphasis added.] [11 Cal. Rptr. at 710–11.]

Other cases holding that the alleged father's paternity must be established before an illegitimate child may be legitimated, or "adopted" by acknowledgment, include *In re Glick's Estate,* 136 Mont. 176, 346 P.2d 987 (1959); *In re Berg's Estate,* 72 N.D. 52, 4 N.W.2d 575 (1942); and *Kirkland v. Henry,* Okla., 296 P.2d 165 (1956). As pointed out in *In re Smith's Estate,* 49 Wash.2d 229, 299 P.2d 550 (1956), adoption of an heir is strictly a statutory procedure and can be accomplished only by strict compliance with adoption statutes.

■ We agree with the cases cited above. The Legislature, in using the term "father" in § 78–30–12, clearly intended that term to be construed in its obvious and natural meaning, i. e., as the biological father. For one not the biological father, recourse would have to be had to the strict requirements of the adoption statutes. Accordingly, we hold that only a natural father can "adopt" an illegitimate child by acknowledgment pursuant to the Utah legitimation statute, § 78–30–12, and thereby become obligated to support the child.

■ Because the trial court found that defendant was not the natural father of plaintiff's child, the finding of an adoption by acknowledgment was erroneous and the order of support based on such an adoption must be set aside.

Defendant was not married to plaintiff, is not the biological father,[1] and has not legally adopted the child. *Carbone v. Superior Court of Napa County,* 18 Cal.2d 768, 117 P.2d 872 (1941), states the general rule that proof of parentage is a jurisdictional prerequisite for an order to support an illegitimate child. Nevertheless, in appropriate cases, a support obligation may be imposed on the basis of estoppel or implied contract. *In re Marriage of Johnson,* 88 Cal.App.3d 848, 152 Cal.Rptr. 121 (1979); *In re Marriage of Valle,* 53 Cal.App.3d 837, 126 Cal. Rptr. 38 (1975). See also *Clevenger v. Clevenger, supra; V.L.P. v. J.S.S.,* Del., 407 A.2d 244 (1978); *Fuller v. Fuller,* D.C., 247 A.2d 767 (1968). However, the use of an estoppel theory to impose a support obligation on a man who is not the biological father of the child involved must be applied with caution. Voluntary support of illegitimate children or stepchildren should not be discouraged. A support obligation based on estoppel could result in serious problems if too broadly applied. If the law imposes a permanent duty on one who undertakes to support children he did not father, men may choose to avoid doing so because they may find themselves permanently obligated.

Defendant's counterclaim alleging fraud and claiming repayment of past support payments made, and for attorney's fees, was dismissed by the trial court because the

---

1. Presumably the child's mother knows who the biological father is. She may look to him for support of the child. In this State there is no time limitation on instituting a suit to determine paternity. *Nielsen, State Dept. of Social Services v. Hansen,* Utah, 564 P.2d 1113 (1977).

court's ruling on legitimacy in effect disposed of defendant's claim. Defendant sought relief based on misrepresentations by the plaintiff that he was the child's natural father. On remand of this case it will be necessary for the trial court to dispose of the counterclaim. We express no view as to the merits of that claim.

Reversed and remanded for further proceedings in conformity with this opinion.

MAUGHAN, WILKINS and HALL, JJ., concur.

CROCKETT, Chief Justice (dissenting):

With the utmost conviction and with such effort I can summon, I protest this decision as an indefensible injustice in the effect it has upon an innocent child. This unfortunate result arises from animosities between adults, for which the child neither has any responsibility nor means of defense. The doing of justice requires not only that the law be vigilant in seeing that those deserving of awards receive them, but that it be equally vigilant in seeing that no harm is inflicted upon those undeserving thereof.[1]

The main opinion impresses me as being predisposed to rule against the plaintiff seeking protection for the child and in favor of the evading defendant. Whether the plaintiff knowingly misrepresented the child's paternity to the defendant has not been determined. In that regard, the fact could be that she was no more certain of the child's paternity than was the defendant. The presumption, footnoted to the main opinion, that: "Presumably the child's mother knows who the biological father is. She may look to him for support of the child" is an unwarranted and unrealistic conjecture. The more important, and what should be controlling proposition, is that for several years the parties each had what they regarded as good and sufficient reasons to accept the fact that the defendant

had fathered the child and to rely and act thereon.

The findings of fact, as recited by the trial court in her memorandum decision, include:

On June 25, 1973, Aaron Gene Webb was born to the plaintiff, who was at the time living with the defendant Richard Webb. Defendant signed the birth certificate as the child's father, participated in naming it, and thereafter for a number of years openly and publicly acknowledged the child as his son. *An order for child support was sought in November of 1974, and several temporary orders thereafter*, by the plaintiff. Temporary support was awarded and paid. The defendant claimed the child as a dependent child for income tax purposes at various times between 1973 and 1977. *In March of 1978*, defendant filed an Answer to Plaintiff's Complaint of 1974 (seeking support, health insurance coverage and custody) in which he, *for the first time*, alleged that he is not the father of the child.

On the basis of the facts as found by the trial court, it is my opinion that the defendant should be estopped to deny his parenthood of Aaron. He signed the birth certificate so acknowledging and persisted in that representation until, for reasons of his own, he seems to have changed his mind.

There is the further proposition that in the previous proceedings, commencing in 1974, upon which the orders for temporary support was based, any issue as to Aaron's paternity was one which could have been raised and resolved. However, no such denial was made nor any issue raised until the subsequent application of the plaintiff for the enforcement of support money in 1978. The well-established rule is that when an issue is either tried or triable in a prior proceeding failure to do so precludes it from being raised in a subsequent proceeding.[2]

---

1. See statement in *Lopes v. Lopes*, 30 Utah 2d 393, 518 P.2d 687 (1974) and authorities cited therein.

2. *Matthews v. Matthews*, 102 Utah 428, 132 P.2d 111 (1942); *Wheadon v. Pearson*, 14 Utah 2d 45, 376 P.2d 946 (1962); *Marticorena v.*

*Miller*, Utah, 597 P.2d 1349 (1979). See *McRae v. McRae*, 115 N.H. 353, 341 A.2d 762 (1975), wherein the court stated: "To permit the husband to raise the question of paternity after an eight year period of uninterrupted acquiescence, with several opportunities to raise the

What has been said above applies with multiple force in favor of the child. He certainly made no misrepresentation to nor committed any fraud upon the defendant. As to the child at least, the defendant should not now be permitted to repudiate his signing nor deny the parentage he so long accepted.

Significantly, in *Clevenger v. Clevenger*,[3] the court stated:

> There is an innate immorality in the conduct of an adult who for over a decade accepts and proclaims a child as his own, but then, in order to be relieved of the child's support, announces, and relies upon his bastardy. *This is a cruel weapon, which works a lasting injury to the child* and can bring in its aftermath social harm. The weapon should garner no profit to the wielder; the putative father should earn no premium by the assertion of the illegitimacy of the child. *If any legal hypothesis can prevent such an inducement to publication of illegitimacy, we should adopt that theory.*[4]

The court continued:

> We therefore examine each of the approaches suggested by the respondent, and, although we do not believe this record sustains their application here, *we point out that if the facts would establish an express agreement for the maintenance of the child or an estoppel as to the*

child, as we explain it, the husband would be liable for the child's support.[5]

Upon that basis, the court later stated:

> The record does not show that the husband represented himself to the child as his natural father. . . . If the facts should show, however, that the husband represented to the boy that he was his father, that the husband intended that his representation be accepted and acted upon by the child, that the child relied upon the representation and treated the husband as his father and gave his love and affection to him, that the child was ignorant of the true facts, we would have the foundation of the elements of estoppel.[6]

> \* \* \* \* \* \*

> These are the elements of estoppel, and that they would, if established, apply here in unusual circumstances, does not make them the less appropriate.[7]

It has also been judicially observed that: "Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when, by so doing, the innocent child would be victimized." [8]

In her decision, Judge Durham was well advised in quoting and placing reliance on Sec. 78–45a–2, U.C.A.1953, which states in part:

> If paternity has been determined or *has been acknowledged according to the laws*

---

issue, would contravene the policy of this State's law to protect the child and the spouse from *the belated resort to scientific proof in an effort to escape parental responsibility."* Id. 341 A.2d at 764.

**3.** 189 Cal.App.2d 658, 11 Cal.Rptr. 707 (1961), cited in the majority opinion.

**4.** Id. 11 Cal.Rptr. at 710.

**5.** Id.

**6.** Id. 11 Cal.Rptr. at 714.

**7.** Id. 11 Cal.Rptr. at 715. See *In re Marriage of Valle*, 53 Cal.App.3d 837, 126 Cal.Rptr. 38 (1975), where those elements were applied and the putative father was held estopped to deny

paternity. The principle of estoppel and its application was further explained in *In re Marriage of Johnson*, 88 Cal.App.3d 848, 152 Cal. Rptr. 121 (1979). In both cases, the ex-husband who was required to provide child support was not the natural father.

**8.** *Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. 307, 369 A.2d 416 (1976). See also statements as to estoppel in *Hansom v. Hansom*, 75 Misc.2d 3, 346 N.Y.S.2d 996 (1973); *Ross v. Ross*, 126 N.J.Super. 394, 314 A.2d 623 (1973); *Watts v. Watts*, 115 N.H. 186, 337 A.2d 350 (1975). That paternity may be established by "an estoppel [of] one charged with the paternity because of his failure to question it after a substantial period of uninterrupted acquiescence," see *Hansen v. Hansen*, N.H., 402 A.2d 1333 (1979).

*of this state*, the liabilities of the father may be enforced . . . .

Following that, she made this comment: The paternity of Aaron has been "acknowledged according to the laws of this state" by operation of Section 78–30–12 above, and the obligations of the defendant for his support are fully enforceable.

It is my conviction that the most vital aspect of the judicial function is to sense where true justice lies and to perceive within the fabric of law the means to accomplish that objective. This Court has heretofore rejected the idea of adherence to narrow rigidities which defeat the purposes of a statute, in favor of perceiving therein its true purpose and giving the intended effect.[9] The pertinent statute is Sec. 78–30–12 which provides that "the father of an illegitimate child, by publicly acknowledging it as his own . . . ." has the effect of adopting and legitimitizing the child. Importantly, the statute concludes that: "The foregoing provisions of this chapter [relating to adoptions, generally] do not apply to *such an adoption*." (All emphasis herein added.)

Consistent with that provision, we have stated that a child so acknowledged is legitimized by adoption.[10] I believe that Section 78–30–12 may properly be characterized as an adoption, as well as a legitimation, statute. It is apparent that the purpose of the statute is to eliminate the necessity of compliance with the formal adoption procedures set forth in the other provisions of Chapter 30 by recognizing the practicalities of situations where children are living with persons who are, in reality, acting as their parents and are assumed to be so. This application of the statute achieves a result which is just, salutary and desirable, both from the standpoint of the individuals involved and of society generally, whether the father is one who assumes and occupies that position in reality, or is the biological father, or both. The principle that legitimacy as a legal status "may exist despite the fact the husband is not the natural father of the child" is recognized by the California Supreme Court.[11]

In making that application of the statute and ruling that it effected an adoption in the circumstances present in this case, I think Judge Durham has been properly sensitive to and given priority to the higher values in human relationships, has arrived at the result which was intended by the statute, and which is found both in doing justice to the parties and in social policy. By way of contrast, I think the more rigid construction espoused by the main opinion produces a result which defeats the salutary purpose which the statute was intended to serve and which is the very essence of injustice to this child.

Based on what I think is the real purpose and intent, and therefore the correct application of Section 78–30–12, I would affirm the judgment of the trial court. However, assuming but not conceding that the main opinion's interpretation of that statute is correct, on remand, further findings should be made as to whether the defendant is estopped to deny the paternity of the child.[12]

---

9. In the case of *Andrus v. Allred*, 17 Utah 2d 106, 404 P.2d 972 (1965), this Court stated that:

. . . one of the fundamental rules of statutory construction is that the statute should be looked at as a whole and in the light of the general purpose it was intended to serve; and should be so interpreted and applied as to accomplish that objective. In order to give the statute the implementation which will fulfill its purpose, reason and intention sometimes prevail over technically applied literalness.

Similarly in *Snyder v. Clune*, 15 Utah 2d 254, 390 P.2d 915 (1964). See also, *Church of the* *Holy Trinity v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892).

10. *Carter v. Carter*, 19 Utah 2d 183, 429 P.2d 35 (1967).

11. *People v. Sorenson*, 66 Cal.Rptr. 7, 437 P.2d 495 (1968), wherein the husband of a woman who had been artificially inseminated with the semen of a third-party donor was deemed to be the "lawful father" for purposes of child support. See also cases cited, footnote 7.

12. That courts in numerous jurisdictions have expressed a willingness to impose "a duty of support under a theory of contract or estop-

pel," see *Hall v. Rosen*, 50 Ohio St.2d 135, 363 N.E.2d 725 (1977), and cases therein cited. Further, the application of the theory of estoppel, "when the facts of a particular case warrant it . . . fills a gap left by the statutes . . . [and] promotes the state's longstanding policy favoring the legitimacy and best interests of children." *Perkins v. Perkins*, 34 Conn.Sup. 187, 383 A.2d 634 (1977).