Brenda BRINKERHOFF nka Brenda Christensen, Plaintiff and Appellee,

v.

Morris Henry BRINKERHOFF, Defendant and Appellant.

No. 960666–CA.

Court of Appeals of Utah.

Aug. 21, 1997.

M. Byron Fisher and Matthew L. Anderson, Salt Lake City, for Defendant and Appellant.

D. Scott Little, Sandy, for Plaintiff and Appellee.

Before WILKINS, Associate P.J., and GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Defendant Morris Henry Brinkerhoff appeals the trial court's ruling that Plaintiff Brenda Brinkerhoff (now Brenda Christensen) is not obligated to pay child support for her former stepchildren, defendant's children by his first marriage, although she was awarded joint legal custody of the children in the parties' original divorce decree. We affirm.

## FACTS

Defendant and plaintiff were married on April 25, 1985. At that time, defendant had custody of six minor children from his prior marriage. The mother of these children was deceased. Two additional children were born during the parties' marriage. The parties divorced on August 26, 1993. In the divorce decree, plaintiff was awarded the "permanent care, custody and control" of the two children born during the parties' marriage. Plaintiff was also awarded joint legal custody of the minor children from defendant's prior marriage, while defendant was awarded physical custody of these children. Both parties were granted reasonable visitation rights with all the minor children. Defendant was ordered to pay $988.00 per month in child support for the parties' two children. Because plaintiff was attending college full time and was unemployed at the time of the divorce, only defendant's income was considered in calculating the child support obligation for the parties' two children.

In January 1995, defendant filed a petition for modification of the divorce decree, seeking, among other things, retroactive modification of his child support obligation. At the time of the modification petition, four of defendant's children from his prior marriage were minors. In his petition, defendant argued that the trial court should recalculate his child support obligation by redetermining his actual income, by imputing to plaintiff "a fair income because she is capable of working," and by taking into account the total number of children he was supporting (i.e., the two children in plaintiff's custody and the four minor children from his prior marriage). Defendant also sought permanent physical custody of the parties' two children.

In June 1995, plaintiff graduated from college and became employed; she also moved to another state with her new husband and the parties' two children. In April 1996, defendant voluntarily dismissed his claim for custody of the parties' two children.

At trial, held in September 1996, defendant argued, among other things, that the trial court should modify his child support obligation by recalculating the award based on a split custody worksheet for six children, not a sole custody worksheet for two children as in the original divorce decree. In response, plaintiff asserted that, under Utah law, stepparents have no legal duty to support former stepchildren after divorce, and thus she should not be required to pay child support for defendant's minor children from his prior marriage. She also argued that defendant had not shown that there was a substantial change in circumstances sufficient to allow modification of the child support obligation in the divorce decree.

After the trial, the trial court determined that, "[w]ith respect to child support, there has been a substantial change in circumstances with respect to plaintiff's income but defendant's income remains substantially the same as it was at the time of the entry of the Decree of Divorce." The trial court also ruled that plaintiff had no duty to support her former stepchildren, concluding that, under Utah Code Ann. § 78–45–4.1 (1996), "[a]ny obligation of a stepparent to support stepchildren terminates upon divorce." The trial court further determined that "there has, in addition, been no substantial change in circumstances with regard to plaintiff's obligation to support her stepchildren since the entry of the divorce Decree." The trial court then modified defendant's child support obligation, ordering defendant to pay $829.60 in child support per month. The trial court reached this figure by taking into account plaintiff's income, recalculating defendant's income, and using a sole custody child support worksheet for two children. The trial court refused, however, to make "[t]he modification of child support ... retroactive to either the time of the filing of the Petition for Modification [ ]or to the time of plaintiff becoming employed."

## ANALYSIS

■ On appeal, defendant asserts that a stepparent with joint legal custody of stepchildren has a duty to support the stepchildren even after divorce. Defendant specifically argues that Utah's stepparent support statute, Utah Code Ann. § 78–45–4.1 (1996), should not be applied to cut off the child support obligation of stepparents who are awarded joint legal custody of their stepchildren, as this would contravene both Utah's domestic relations statutory scheme and public policy as evidenced in case law. We review the trial court's statutory interpretation concluding that plaintiff had no legal duty to support her former stepchildren under a correction of error standard, granting the trial court's conclusion no deference. *See Bellonio v. Salt Lake City Corp.*, 911 P.2d 1294, 1296 (Utah.Ct.App.), *cert. denied*, 917 P.2d 556 (Utah 1996).

### I. Stepparent's Duty to Support Stepchildren

#### A. Utah's Stepparent Support Statute

"There was no duty at common law for a stepparent to support a stepchild." *Wiese v. Wiese*, 699 P.2d 700, 702 (Utah 1985). However, many states, including Utah, have adopted provisions requiring a stepparent to support stepchildren as long as the stepparent is married to the children's natural parent. Utah's stepparent support provision, Utah Code Ann. § 78–45–4.1 (1996), was adopted in 1979. This provision currently states:

> A stepparent shall support a stepchild to the same extent that a natural or adoptive parent is required to support a child. Provided, however, that upon the termination of the marriage or common law relationship between the stepparent and the child's natural or adoptive parent the support obligation shall terminate.

*Id.*

■ Defendant argues that section 78–45–4.1 "should not apply to a stepparent who actively pursues and obtains joint legal custody." Defendant asserts that, although "[g]enerally, under Utah law, a stepparent's legal responsibility to support stepchildren terminates upon divorce," "in the exceptional case where the stepparent has sought and obtained joint legal custody of her stepchildren, the responsibility to support the child continues after the divorce." Defendant is

apparently suggesting that, in this situation, the support obligation imposed on stepparents under section 78–45–4.1 should continue and only the portion providing that the statutory duty to support stepchildren terminates upon divorce should not apply. Defendant argues that this interpretation of section 78–45–4.1 is consistent with "Utah's domestic relations statutory scheme"[1] and general public policy. However, such an interpretation is inconsistent with the plain language of the statute.

When interpreting a statute, we look first to the plain language. "[W]e will interpret a statute according to its plain language, unless such a reading is unreasonably confused, inoperable, or in blatant contravention of the express purpose of the statute." *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290, 1292 (Utah 1996). "Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations." *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994).

■ The plain language of section 78–45–4.1 does not impose any obligation upon stepparents who have joint legal custody of stepchildren to support the stepchildren after divorce. Instead, the statute clearly provides that the legal duty imposed on stepparents under this section ends upon divorce. No exception exists for stepparents who have been awarded joint legal custody of stepchildren upon divorce, or who may have some other type of continuing legal relationship with their stepchildren (such as being awarded visitation) after divorce. Thus, we conclude that plaintiff has no duty under section 78–45–4.1 to support her former stepchildren after the parties' divorce, despite being awarded joint legal custody of the stepchildren.

## B. Equitable Estoppel and Implied Contract

■ Defendant also refers generally to two theories from case law—equitable estoppel and implied contract—under which courts have required stepparents to support stepchildren.[2] *See Mace v. Webb*, 614 P.2d 647,

---

**1.** To support this argument, defendant cites three statutes, stating that Utah Code Ann. § 78–45–4.1 (1996) should be construed in pari materia with these statutes. *See Utah County v. Orem City*, 699 P.2d 707, 709 (Utah 1985) (stating statutes are considered to be in pari materia and thus must be construed with reference to one another and harmonized if possible where they relate to same class of people or have same purpose). However, none of these statutes directly supports defendant's interpretation of section 78–45–4.1, nor are they inconsistent with our interpretation of this section, as set forth below, based on its plain language. In addition, none of these statutes creates a duty on the part of stepparents with joint legal custody of stepchildren to support the stepchildren after divorce.

Defendant first cites two provisions from Utah's joint legal custody statute. *See* Utah Code Ann. §§ 30–3–10.1 to –10.4 (1995). Defendant states first that the definition of "joint legal custody" found in section 30–3–10.1 refers to the "sharing of the rights, privileges, *duties,* and powers of a parent by both parents." *Id.* § 30–3–10.1(1) (emphasis added). However, the full text of this provision states that "joint legal custody" is the sharing of rights and duties "by both parents, *where specified.*" *Id.* (emphasis added). Thus, although this language contemplates that an award of joint legal custody may include a child support order, this provision does not itself create a duty on the part of a joint legal custodian to provide support.

Defendant next points out that an award of joint legal custody may preclude eligibility for Aid to Families with Dependent Children. *See* Utah Code Ann. § 30–3–10.2(4). Defendant asserts that "[b]ecause only families in which one parent provides support for children are eligible for this program ... it is clear that the code assumes that an award of joint legal custody means that both parents will contribute to the support of the children in question." However, the provision cited by defendant states only that an order of joint legal custody *may* preclude AFDC eligibility. *See id.* Further, the joint legal custody statute also states that "[a]n order of joint legal custody, in itself, is not grounds for modifying a support order." *Id.* § 30–3–10.3(5). This also suggests that the Legislature did not intend an order of joint legal custody to necessarily affect or be tied to the award of child support.

Finally, defendant cites the definition of "legal custody" found in Utah Code Ann. § 78–3a–103(n) (1996). However, that provision is not relevant to our analysis. The definition defendant cites, found in the Juvenile Court Act, does not govern divorce proceedings. Further, it refers to "legal custody" and not "*joint* legal custody," which is the specific relationship at issue here.

**2.** Defendant also relies on a third theory from case law—the doctrine of in loco parentis. Defendant asserts that because plaintiff requested joint legal custody of her former stepchildren she

649 (Utah 1980) (stating "in appropriate cases, a support obligation may be imposed on the basis of equitable estoppel or implied contract");[3] *see also Wiese v. Wiese*, 699 P.2d 700, 702–03 (Utah 1985) (stating that former stepparent might incur liability for support of former stepchild based on equitable estoppel). Defendant states that both theories "depend on the creation of reasonable expectation that the stepparent will be supporting the child," and that plaintiff's "post-marriage legal efforts to continue the relationship via joint legal custody sustain such a reasonable expectation." However, apart from this general assertion, defendant has not provided any support or analysis for his argument that this court should find plaintiff obligated to support her former stepchildren under these theories.

Beyond referring generally to plaintiff's request for joint legal custody of the stepchildren, defendant has not asserted any specific conduct or representations by plaintiff upon which the doctrines of equitable estoppel or implied contract could rest. *See Wiese*, 699 P.2d at 702 (stating party asserting equitable estoppel must prove detrimental reliance "on the actions or representations of the party to be estopped," i.e., party must show that child will suffer because "stepparent's representation or conduct causes [child] to be cut off from [child's] noncustodial natural parent's

support"). Defendant offers no support for the implied proposition that merely seeking joint legal custody amounts to an affirmative representation by plaintiff to support her former stepchildren. Defendant also has not presented any evidence of detrimental reliance. We therefore reject defendant's argument that, based on equitable estoppel or implied contract,[4] plaintiff should be required to support her former stepchildren in this case.

Thus, because defendant has not provided any statutory basis for imposing a legal duty on a former stepparent with joint legal custody of stepchildren to support the stepchildren after divorce, and because defendant has not shown that the theories of implied contract or equitable estoppel apply in this case, we conclude the trial court properly found that plaintiff had no legal obligation to support her former stepchildren.[5]

### C. Utah's Child Support Guidelines

We note that, even though stepparents may have no statutory duty of support after divorce, courts may take into account a parent's obligation to support other children in determining a parent's child support obligation. Indeed, Utah's statutory child support scheme contemplates this situation.

Child support orders are governed by the Uniform Civil Liability for Support Act, Utah

should be considered to have in loco parentis status, which he argues obligates her to provide financial support for the stepchildren. *See Gribble v. Gribble*, 583 P.2d 64, 66–68 (Utah 1978). However, defendant did not raise this argument before the trial court; therefore, the court had no opportunity to make findings as to whether plaintiff intended to stand in loco parentis for her stepchildren, and the argument was not preserved for appeal. *See Ong Int'l (U.S.A.), Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993).

3. In *Mace v. Webb*, 614 P.2d 647 (Utah 1980), although recognizing that a support obligation may be imposed on a stepparent even after divorce based on equitable estoppel or implied contract, the court further stated that

the use of an estoppel theory to impose a support obligation on a [person] who is not the biological [parent] of the child involved must be applied with caution. Voluntary support of illegitimate children *or stepchildren* should not be discouraged. A support obligation based on estoppel could result in serious problems if too broadly applied.

*Id.* at 649 (emphasis added). The court explained that if the law were to impose a duty on those who voluntarily support children for whom they are not the biological parent, they "may choose to avoid doing so because they may find themselves permanently obligated." *Id.*

4. In addition, we note that before the trial court, defendant objected to plaintiff's proposed finding that "[t]here have been no facts presented supporting an implied contract from Plaintiff, to support the Defendant's children from his deceased wife" by asserting that "defendant has never alleged an implied agreement for plaintiff to support the children of his first marriage."

5. Because we conclude defendant has not shown plaintiff has a duty to support her former stepchildren in this case, we do not reach defendant's additional claims that the trial court erred in finding no substantial change in circumstances regarding plaintiff's child support obligation for her former stepchildren, and that any award of child support imposed on plaintiff for the stepchildren should be applied retroactively.

Code Ann. §§ 78–45–1 to –13 (1996). This Act establishes child support guidelines, which apply to any "order establishing or modifying an award of child support," *id.* § 78–45–7.2(1), and which are "applied as a rebuttable presumption in establishing or modifying the amount of temporary or permanent child support," *id.* § 78–45–7.2(2)(a).

■ Section 78–45–7.2 of the Act provides that in setting or modifying a child support award, the trial court may "at the option of either party" take into account under the guidelines "[n]atural or adoptive children of either parent who live in the home of that parent and are not children in common to both parties." *Id.* § 78–45–7.2(4)(a). If this is raised by either party, "[a]dditional worksheets shall be prepared that compute the obligations of the respective parties for the additional children. The obligations shall then be subtracted from the appropriate parent's income before determining the award in the instant case." *Id.* § 78–45–7.2(4)(b). However, "[i]n a proceeding to modify an existing award, consideration of natural or adoptive children other than those in common to both parties ... may not be applied to justify a decrease in the award," but may only "be applied to mitigate an increase in the award." *Id.* § 78–45–7.2(5).[6]

Under these provisions, the proper time for defendant to have raised his argument that the trial court should have taken into account the total number of minor children defendant was supporting in determining defendant's child support obligation (rather than just considering the two children from the parties' marriage) was at the time of the parties' divorce. If this had been raised at that time, the trial court could then have taken into account the minor children from defendant's prior marriage that defendant was supporting in setting defendant's child support obligation for the parties' two chil-

dren. However, defendant did not raise this issue at that time. Although a parent's additional support obligation may be considered in modifying an award, the additional obligation may not be applied to justify a decrease in the child support award, but only to mitigate an increase. In this case, plaintiff did not seek an increase in the child support award. Thus, under section 78–45–7.2(5), defendant's support obligation for his minor children from his first marriage may not be applied to reduce his child support payments for the parties' minor children.

■ Further, to modify a child support order, the party seeking modification must establish that there has been "a material change of circumstance." *Id.* § 78–45–7(1)(a). Because defendant's obligation to support his minor children from his prior marriage existed at the time the original divorce decree was entered, this additional support obligation is not a material change of circumstance.

## II. Attorney Fees

■ Finally, plaintiff requests attorney fees incurred on appeal. Although plaintiff was awarded a substantial amount of her attorney fees incurred in related contempt proceedings before trial, the trial court stated at trial that neither party raised the issue of attorney fees, and "therefore this Court makes no determination concerning attorney's fees." Because plaintiff was not awarded attorney fees incurred in litigating these issues at trial, and because we do not find this appeal to be frivolous under Rule 33 of the Utah Rules of Appellate Procedure, we decline to award plaintiff her attorney fees on appeal.[7] *See Burt v. Burt,* 799 P.2d 1166, 1171 (Utah.Ct.App.1990).

## CONCLUSION

Utah's stepparent support statute does not provide a basis for requiring stepparents who

---

**6.** A parent's duty to support other children may also be taken into account when the statutory presumption is rebutted and the guidelines are not applied. To rebut the statutory presumption, the trial court must make a specific finding that use of the guidelines would be unjust, inappropriate, or contrary to the best interests of the children. *See* Utah Code Ann. § 78–45–7.2(3) (1996). If the guidelines are rebutted, the court must then "establish support after considering

all relevant factors, including ... the responsibilities of the obligor and the obligee for the support of others." *Id.* § 78–45–7(3).

**7.** Plaintiff also asserts that she should be awarded attorney fees pursuant to Utah Code Ann. § 30–3–3 (1995). Section 30–3–3 authorizes a trial court to award attorney fees in a divorce action. However, the decision to make such an award "must be based on evidence of the finan-

have joint legal custody of stepchildren to support the stepchildren after divorce, and defendant has not pointed to any other statute creating such a duty of support in these circumstances. Defendant also has not shown that plaintiff should be required to support her former stepchildren based on equitable estoppel or implied contract. Accordingly, we affirm. Each party shall bear its own attorney fees and costs.

GREENWOOD, J., concurs.

WILKINS, Associate Presiding Judge (concurring):

I concur completely in the court's opinion. I write separately only to address briefly one policy issue raised by defendant.

In his brief and argument before this court, defendant suggests that public policy should weigh in favor of requiring a former stepparent to assist financially in supporting former stepchildren of whom the former stepparent has joint legal custody. I understand this argument to mean that in exchange for the benefit of a continued relationship with the child or children, the former stepparent should be obligated to share in the burden of support. As with all legal custody arrangements available under the law when a marriage involving minor children is dissolved, the purpose of joint legal custody is to provide for the children's proper care. The purpose of a custody arrangement is not to allocate benefits between the divorcing parents.

The legislature, in enacting statutory guidelines for various support and custody arrangements, seeks to minimize the negative effects on children upon the dissolution of the parents' marriage relationship. Where, as here, one of the former marriage partners has established a strong bond with the natural children of the other marriage partner, the continuation of that relationship by the divorcing partners' agreement will surely aid in minimizing the negative impact of the divorce on the children. That is good public policy. On the contrary, to impose an ongoing financial burden on the former stepparent as the price of continuing the relationship will surely decrease the number of former stepparents willing to assist in the nurture and upbringing of the affected children. That would be bad public policy.

I believe the outcome announced in our decision today is not only in keeping with the legislature's clearly worded intent, but also supports the better public policy of encouraging healthy relationships between parents and those in a parental role and children. Although the financial burden of raising children is often daunting, defendant's options are to bear that burden himself and raise the children alone, or bear that burden himself and have a loving former "mother" assist with the children in the joint legal custody arrangement agreed to by these two parties. From the children's point of view, the latter seems the better choice. It is from the children's point of view that public policy has been made in this instance.

---

cial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Bell v. Bell*, 810 P.2d 489, 493 (Utah Ct.App.1991). Because plaintiff did not raise the issue of attorney fees at trial and has not made a showing of financial need on appeal, she is not entitled to attorney fees under this provision.