Michael PIETROS

v.

Cheryl PIETROS.

No. 92–527–A.

Supreme Court of Rhode Island.

March 14, 1994.

Maureen A. Hobson, Warwick, for plaintiff.

Ronald A. Tagliaferri, Cranston, for defendant.

John G. Abood, Cranston, guardian ad litem for minor child.

OPINION

SHEA, Justice.

The plaintiff, Michael A. Pietros (hereinafter Michael), appeals from a Family Court order to pay child support and medical coverage for the one child born during his marriage to the defendant, Cheryl Pietros (hereinafter Cheryl). The Family Court justice denied Michael's attempt to introduce blood-test results establishing to a medical certainty that he was not the child's biological father. The Family Court justice decided that Michael was equitably estopped from challenging his paternity at the divorce proceeding. We affirm.

The parties began dating in August of 1985, shortly after Cheryl's relationship with another man had ended. At the time the parties began dating, Cheryl was already pregnant. Cheryl informed Michael of the pregnancy in October of 1985, and she testified that his immediate reaction was to propose marriage. The couple was married on November 13, 1985. The child was born just under three months later on February 9, 1986.

The parties were both nineteen years old at the time of the marriage. Prior to the marriage, Michael assured Cheryl that he would treat the child as his own, support the child, and live as a family unit. Michael repeated these assurances in the presence of Cheryl's relatives. Michael was aware that Cheryl had terminated a previous pregnancy and was contemplating similar action for this pregnancy. The trial justice found that Cheryl relied on Michael's assurances when deciding to marry Michael, to bear the child, and to assume the joint obligation to support the child until majority.

The couple agreed to name the child Michael Vincent Pietros, apparently in honor of Michael and Michael's father. The child's birth certificate and baptismal record listed Michael as the child's father. The parties

lived together as a family. Michael held himself out to the community as the child's father. The child called Michael "daddy," and called Michael's mother "Gramma Elaine."

By May of 1988, however, marital difficulties led Cheryl to file for divorce. In his verified counterclaim for divorce, Michael sought custody of the two-year-old child. The couple's ensuing separation lasted several months. The parties reconciled and no further action was taken on the divorce complaint.

Any remaining marital harmony, however, was exhausted over the next two years. Michael testified that Cheryl kicked him out of the house and gave numerous household furnishings to her mother. The parties apparently reconciled until their final breakup in September of 1990. Michael testified that Cheryl left him only to return approximately one week later to remove the second set of household furnishings. Michael then filed the complaint for divorce that eventually brought the parties before this court.

In his complaint for divorce Michael sought custody of the then four-year-old child. Cheryl filed a counterclaim for divorce. On February 20, 1991, a Family Court justice held a hearing on the parties' opposing motions for temporary orders. The justice ordered Michael to pay $96 per week for child support and ordered all parties to undergo blood testing. After the blood tests confirmed that Michael was not the biological father of the child, both Michael and Cheryl jointly moved for appointment of a guardian ad litem. On October 9, 1991, Michael moved to amend his divorce complaint to name the alleged biological father as a party and to seek an order terminating his parental rights and obligations to the child.

The Family Court justice denied Michael's motion to amend. A trial on the merits took place on March 27, 1992. Cheryl testified that the biological father of her child was her former boyfriend. The former boyfriend testified that although he currently had steady employment and no dependents, he did not want any contact or involvement with the child. The Family Court justice denied several attempts by Michael's attorney to admit

the results of the court-ordered blood tests into evidence. The Family Court justice relied on this court's decision in *Pettinato v. Pettinato,* 582 A.2d 909 (R.I.1990), to find Michael equitably estopped from challenging his paternity at the divorce proceeding. The Family Court justice subsequently ordered Michael to pay child support and to maintain medical insurance for the child.

■■■■ The issue before this court is whether the Family Court justice erred in finding equitable estoppel precludes the husband in a divorce proceeding from refuting his paternity in order to avoid child-support payments. Michael is the presumed father of the child under Rhode Island law because he and the child's natural mother were married to each other when the child was born. *See* G.L.1956 (1988 Reenactment) § 15–8–3–(a)(1) (listing criteria for presumption of paternity). The trial justice found that both Cheryl and the child relied to their detriment on Michael's assurances that he would provide them emotional and financial support. The trial justice decided that Michael should be equitably estopped by his past conduct from escaping the obligation to pay child support solely because he is not the child's biological father. After review of the record, the applicable case law and the arguments of the parties, we cannot say that the trial justice was clearly wrong.

It is not disputed that Michael is not the biological father of the child. Both Cheryl and Michael testified that Michael was not the biological father. Cheryl's former boyfriend, the putative biological father, testified that he was sexually involved with Cheryl until their relationship ended in August of 1985. This case does not concern the admissibility of blood tests to disprove paternity because the child's paternity is not in dispute. The crux of this case is whether a court may impose child-support obligations on a husband who is not a child's biological father.

This court has held a mother equitably estopped from using blood tests to disestablish her husband's paternity of her child during a routine divorce proceeding. *Pettinato,* 582 A.2d at 912. We stated that the underly-

ing rationale of the equitable-estoppel doctrine is that in "certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child." *Id.* at 912–13 (quoting *John M. v. Paula T.*, 524 Pa. 306, 318, 571 A.2d 1380, 1386 (1990)). The trial justice found the circumstances of the present case warranted applying the doctrine of equitable estoppel.

The trial justice's decision enumerated the numerous facts that she relied upon to invoke the doctrine of equitable estoppel. Both Michael and Cheryl knew prior to their marriage that Michael was not the child's biological father. Michael and Cheryl discussed the child at length and in the presence of Cheryl's relatives prior to the marriage. Cheryl had considered terminating this pregnancy. Michael assured Cheryl that he would treat the child as his own, support the child, and live with Cheryl and the child as a family unit. The parties did live as a family, and the evidence included a newspaper photograph of Michael and "his son Michael." Michael never told the child that he was not his father. The child gave love and affection to Michael, and the child bonded to Michael as his father. Prior to the marriage, Michael had expressly stated to Cheryl's mother that he was aware of his obligation to support the child if he married Cheryl. The trial justice found that Cheryl's decision to bear the child was a direct result of Michael's promises.

On appeal both parties cited case law from other jurisdictions to support their arguments for whether equitable estoppel applies to this case. A review of these and other cases demonstrates that the decision to apply equitable estoppel is necessarily a case-by-case determination.[1] Although each case turns on the particular circumstances presented, we must emphasize that the Family Court should employ the doctrine of equitable estoppel to serve the needs and interests of the child.

In the present case Michael is the only father the child has ever known. Michael argued that he had no intention of reestablishing contact and providing the child with further love and affection. As between Michael and the putative biological father, both

---

1. *See, e.g., In re Johnson*, 88 Cal.App.3d 848, 152 Cal.Rptr. 121 (1979)(estopping husband from denying paternity when during six-year marriage husband impliedly represented to child that he was true father); *Clevenger v. Clevenger*, 189 Cal. App.2d 658, 11 Cal.Rptr. 707 (1961)(finding trial record insufficient to establish basis for estopping husband); *Perkins v. Perkins*, 34 Conn. Supp. 187, 383 A.2d 634 (1977)(estopping husband from denying paternity when he knew wife was pregnant when they married and he promised to be child's father); *Wade v. Wade*, 536 So.2d 1158 (Fla.Dist.Ct.App.1988)(estopping husband from denying paternity when he knowingly held out child as his own for nine-year period); *Knill v. Knill*, 306 Md. 527, 510 A.2d 546 (1986)(not estopping husband from denying paternity because no evidence child suffered financial detriment from twelve-year relationship with husband); *A.R. v. C.R.*, 411 Mass. 570, 583 N.E.2d 840 (1992)(not estopping husband from denying paternity because no evidence the two children under age of three years relied on husband's representations); *Atkinson v. Atkinson*, 160 Mich.App. 601, 408 N.W.2d 516 (1987)(holding equitable estoppel did not preclude wife from admitting blood tests disproving husband's paternity, but husband acquired paternity rights through doctrines of "equitable parent" and "equitable adoption"); *Nygard v. Nygard*, 156 Mich. App. 94, 401 N.W.2d 323 (1986)(holding elements of equitable estoppel existed permitting court to compel nonbiological father to pay child support); *Berrisford v. Berrisford*, 322 N.W.2d 742 (Minn.1982)(holding husband not estopped from denying paternity because husband acted as father only for first fourteen months of child's life); *Watts v. Watts*, 115 N.H. 186, 337 A.2d 350 (1975) (estopping husband from denying paternity when he acknowledged children as his own for over fifteen years); *M.H.B. v. H.T.B.*, 100 N.J. 567, 498 A.2d 775 (1985)(estopping former husband from denying duty to provide child support because of husband's conduct during marriage and after divorce); *Miller v. Miller*, 97 N.J. 154, 478 A.2d 351 (1984)(recognizing equitable estoppel may be invoked to require stepparent to pay child support but remanding for further fact findings); *Wachter v. Ascero*, 379 Pa.Super. 618, 550 A.2d 1019 (1988)(equitably estopping putative father from challenging paternity after voluntarily acknowledging paternity in writing and entering into an agreed support order); *In re Montenegro*, 365 Pa.Super. 98, 528 A.2d 1381 (1987)(estopping husband from denying paternity in order to remove his name from child's birth certificate five years after separation from mother); *Wiese v. Wiese*, 699 P.2d 700 (Utah 1985)(not estopping husband from denying paternity because no evidence that child could not pursue support claim against biological father).

of whom profess no interest in a future relationship with the child, we agree with the trial justice that Michael should bear the burden of child support. It is in the child's best interest that the man who encouraged a loving paternal relationship with the child, and who received the benefits of the child's love and affection not escape the concomitant obligation of support. As deep as our concerns are for Michael, we cannot sanction the proposition that children can be embraced and raised by a person as a parent and then discarded when the parents no longer get along.

This case reached our court upon an appeal from a complaint for divorce. Michael originally sought custody of the child in his divorce complaint, and had sought joint custody in a divorce counterclaim some two years earlier, although he subsequently moved to amend his complaint to deny paternity and to avoid child-support payments. Children are not mere personal property to be assigned or distributed upon divorce.

> "The relationship of father and child is too sacred to be thrown off like an old cloak, used and unwanted. We are dealing with the care and education of a child during his minority and with the obligation of the party who has assumed as a father to discharge it. The law is not so insensitive as to countenance the breach of an obligation in so vital and deep a relation, undertaken, partially fulfilled, and suddenly surrendered." *Clevenger v. Clevenger,* 189 Cal.App.2d 658, 674, 11 Cal.Rptr. 707, 716 (1961).

We have often stated that we will not disturb the findings of a trial justice sitting without a jury unless the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Moran v. Moran,* 612 A.2d 26, 34 (R.I.1990); *Centazzo v. Centazzo,* 509 A.2d 995, 997 (R.I.1986); *Alix v. Alix,* 497 A.2d 18, 20 (R.I.1985). The trial justice below found that the circumstances justified equitably estopping Michael from denying his paternity to avoid the child-support obligation. We cannot say that the trial justice overlooked or misconceived any material evidence, nor was the trial justice clearly wrong.

It is important to state that this decision works no injustice. The dissenting justices in a decision relied upon by Michael recognized the true nature of estoppel: "To so estop [the husband], in the circumstances of this case, is not affirmatively to impose a duty of child support upon him. That duty is placed upon [the husband], not directly by the application of estoppel itself, but rather because his voluntary assumption of the parental role over such an extended period now precludes him from disavowing parental responsibility for child support." *Knill v. Knill,* 306 Md. 527, 554, 510 A.2d 546, 560 (1986)(Murphy, C.J., dissenting). Michael's liability for child-support payments is a result of his voluntary and continuous course of conduct as the child's only father. Indeed, the trial justice found that Cheryl's decision to bear the child was a direct result of Michael's assurances that he would assume the parental role. No injustice results to hold Michael now accountable for the direct consequences of his actions.

For these reasons the plaintiff's appeal is denied and dismissed, the judgment of the Family Court is affirmed, and the papers of the case are remanded to the Family Court.