[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown, by complaint returnable to this court November 10, 1992. He also sought `such other and further relief as the court deems appropriate'. The defendant wife, appearing pro se throughout these proceedings, admitted the allegations of the complaint. She also filed a cross complaint alleging that a child, D., born prior to the marriage, was issue of the marriage. She also sought a dissolution of the marriage on the ground of irretrievable breakdown, custody and support of the minor child and other relief as on file.
As the paternity of the child was hotly contested, the court appointed an attorney for the child who fully participated in the trial. The state of Connecticut appeared by an assistant attorney general, who disclaimed any interest in the case if the plaintiff was not adjudged to be the father of the child.
The parties filed financial affidavits, each testified and a number of documentary materials were introduced into evidence.
The court, from the evidence, finds as follows:
The plaintiff husband married the defendant wife October 7, 1988, in San Diego, California. The wife's birth name was Laura Rosello, and she resided continuously in the state of Connecticut for more than one year before the date of the complaint, October 8, 1992. All statutory stays have expired, and the court has jurisdiction.
The wife gave birth to her son D. on July 31, 1987, before the marriage. The husband did not adopt the child, nor did he acknowledge paternity of the child pursuant to General Statutes § 46b-172. Upon his motion, blood samples from the couple and the child were drawn for paternity determination. On the basis of the blood and genetic testing, the husband was excluded from paternity of D. The wife claimed that the husband was not the person sampled, and moved for, and was granted a second test. The results of the second test reconfirmed the husband's exclusion from paternity.
The wife basically claims that the husband should be estopped from denying his paternity of the child. She points to a number of letters written by him referring to the child as `his' or `our' son, to a notarized record of paternity form which the CT Page 12207 husband signed in California more than one year after the child's birth, acknowledging himself to be the child's father, and a proceeding in the probate court for the District of Norwich in which the child's last name was changed to that of the husband's. He was given notice of this proceeding but neither objected or consented to the name change.
The husband was incarcerated for most of the parties' marriage, and at the present time, he remains under the supervision of the Department of Corrections, residing in a type of halfway house.
He has never developed a relationship with the child, he provided no support for the child, and never sent him a gift, letter or card. The only way the child knows him as a father is because the mother tells the child so.
Neither General Statutes § 45a-438(b)(1)[1] or §46b-60[2] benefit the defendant in her quest of the husband's paternity of D.
Both of these statutes, however, require that the spouses be the actual parents of the child before the legitimation of the child occurs. See Remkiewicz v. Remkiewicz,180 Conn. 114, 118 (1980); Morrow v. Morrow, 165 Conn. 665, 670
(1974).
The court in Morrow rejected a finding of paternity on the basis of equitable estoppel holding no such estoppel occurred. In Remkiewicz, the court was faced with a claim that the husband should be equitably estopped from denying paternity because (a) he stated under oath he was the father of the child; and (b) he took the child as a tax exemption; and (c) he publicly held the child out as his. The court upheld the trial court's denial of paternity and said: "Estoppel rests on the misleading conduct of the party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." Id., 119.
In Perkins v. Perkins, 34 Conn. Sup. 187 (Super.Ct. 1987), the court applied an equitable estoppel theory to bar a husband's denial of paternity. In Perkins, the court found that the mother of the child changed her position by marrying the husband and giving up the possibility of adoption or finding other means of support on the strength of the husband's CT Page 12208 promises. During the wife's pregnancy, the husband has promised that he would not deny the child was his and would support the child and give it his name. The Perkins court found the two essential elements of estoppel to exist. They are: ". . . the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done." Morrow v.Morrow, supra, 165 Conn. 669.
Here, the wife's claim of equitable estoppel must fail. She has not shown that she changed her position to her prejudice as a result of any misleading conduct of the plaintiff. The letters from the husband referring to D. as his son and his signing of the notarized paternity form after D's birth simply does not rise to the level of Perkins.
It is significant that neither in Remkiewicz orMorrow, were the best interests or welfare of the child whose paternity was at issue discussed. In Morrow, a guardian ad litem appeared for the child; in Remkiewicz, the state of Connecticut sought support for the minor child, but no attorney or guardian ad litem appeared for or was appointed to represent the best interests of the child.
A number of cases from other jurisdictions have applied an equitable estoppel theory to find paternity against a husband who was indisputably not a child's biological father when it was found to be in the child's best interests. See, for example, Pietros v. Pietros, 638 A.2d 545 (R.I. 1994) (Child born three months after marriage; husband made assurances of treating child as his own and supporting the child; mother had previously terminated a pregnancy and was considering doing so);In Re Marriage of Johnson, 88 Cal.App.3d 848,152 Cal.Rptr. 121 (1979) (husband estopped from denying paternity after representing to child during six-year marriage he was true father); Wade v. Wade, 536 So.2d 1158 (Fla.App. 1 Dist. Ct. App. 1988) (husband estopped from denying paternity when he knowingly held child out as his own for nine years); Watts v.Watts, 115 N.H. 186, 337 A.2d 350 (1975) (husband estopped from denying paternity when he acknowledged children as his own for over fifteen years).
These courts and others have reasoned that equitable CT Page 12209 estoppel should be applied to serve the best interests of the child and to avoid an injustice. Although the consequences of finding that the husband is not the father are grave, as it results in denying legitimacy to D. and leaves him fatherless, the court may do nothing else under the facts here. There is no credible evidence that the plaintiff promised to support the child. There is no evidence that he held himself out to the child as his father or established a father-child relationship with him. In fact, the plaintiff never supported the child, has been incarcerated for most of the past six years and has minimal earning capacity. It is difficult to see, especially in the face of the plaintiff's present denial of the child and his unwillingness to father and nurture him, how the best interests of the child would be advanced by estopping the husband from denying fatherhood, and I decline to do so here.
The child's attorney points out that the plaintiff has physically abused the defendant and argues that it is not in the child's best interest to involve the plaintiff in the child's life. This court agrees. He was never a father of any sort to this child, he does not wish to be, and it is unlikely that he would ever be.
The court finds the marriage irretrievably broken down, and a decree dissolving the marriage may enter on that ground, together with a finding that the child D. is not issue of the marriage.
The wife is 46 years of age, is a disabled former government employee and receives $223 per week gross in disability benefits. She receives some state assistance for the child. The plaintiff is 34 years of age and presently has no income. The parties have no assets.
Having considered the relevant statutory criteria in General Statutes §§ 46b-81 and 46b-82, no alimony is awarded to either party, and no property assignments are made, as there is none to assign.
The attorney for the child may apply for compensation pursuant to General Statutes § 46b-62.