[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED AUGUST 2, 1995 CT Page 9935
On August 1, 1994, the plaintiff, Carol L. Judson, instituted this proceeding against her husband, the defendant Charles W. Judson, seeking a dissolution of their marriage, custody and support of their minor children, and other relief. The complaint alleges that the parties were married on August 10, 1985, that there are three minor children issue of the marriage, and that the marriage has broken down irretrievably. On August 5, 1994, the defendant filed an answer admitting the allegations of the complaint, and a cross-complaint seeking custody and support of the minor children, an equitable division of jointly held property, assignment of the estate under Section 46b-81
of the General Statutes, and other relief. On February 23, 1995, the defendant filed a request to amend his answer and cross complaint. In the amended answer and cross-complaint, the defendant no longer admits paternity of the minor children, but instead leaves the plaintiff to her proof. In addition to the relief originally sought by the defendant, the amended cross-complaint seeks a determination of the paternity of the minor children. Pursuant to Section 46b-168
of the General Statutes, the defendant now moves for an order for blood testing of the minor children to determine their paternity and that costs be paid by the state.
The court directed the parties to submit memoranda of law on the following issues: (1) whether the defendant is estopped from raising a claim denying paternity of the children; (2) whether there should be a balancing of the father's rights versus the rights of the children; (3) how do the issues of the public policy of the State of Connecticut and the United States relate to this issue; and (4) if the court grants the defendant's motion, will the door open for other men to come in to have visitation with the minor children, and should the children be permitted to have continuing visitation with the defendant. The defendant, plaintiff and counsel for the minor children submitted memoranda of law in support of their respective positions. CT Page 9936
The defendant argues that under the principle of equitable estoppel he is not estopped from denying paternity of the minor children because he has done nothing to make the plaintiff change her position to her detriment. The defendant argues that if he is to ever have the opportunity to challenge the paternity of the minor children, it must be done during this dissolution action. The defendant also argues that the defendant's rights and the minor children's rights are appropriately balanced through the rebuttable presumption that a child born in wedlock is the child of the husband. Furthermore, the defendant argues that public policy of this state and the United States would be best served by a determination of paternity. The defendant also argues that if it is determined that he is not the biological father, the true natural father could then assert rights and be ordered to assume support obligations. The court would also have discretion to continue to award visitation rights to the defendant depending upon the best interests of the children.
The plaintiff argues that the court should exercise its discretion and deny the defendant's motion. The plaintiff concedes that the issue of paternity must be raised by the defendant now, if it is to be raised at all. However, the plaintiff argues that the defendant must demonstrate more than just a mere suspicion that he is not the father of the children. The plaintiff argues that the court is obligated to look after the best interests of the children and to protect familial relationships. Since the defendant has never raised this issue before, despite being married for nearly ten years, it appears that he is only attempting to escape from his support obligation, while at the same time seeking custody of the children. Thus, the plaintiff argues that the defendant does not have the best interests of the children in mind.
Counsel for the minor children asserts that the defendant is estopped from denying paternity of the minor children because the estoppel runs directly to children, who have relied on the representations and the relationship developed with the defendant as their father. Additionally, the children's interests outweigh CT Page 9937 any interest the defendant has in a paternity determination. Finally, the representative of the minor children contends that a determination that the defendant was not the father of the children would have emotional, psychological and logistical ramifications that are not in the interest of any of the parties involved.
This case presents the anomalous situation of a father contesting the paternity of the minor children in order to escape support obligations, while at the same time seeking custody and support of the same children. The first child alleged to be issue of the marriage was born in January 1982, prior to the marriage. The two other children, twins, were born in February 1988 after the parties were married. The defendant now claims that plaintiff has had numerous affairs with other men, both during the course of the marriage and prior to the marriage, and that he always suspected that he was not the father of the children. He did not raise this issue until six months into the divorce proceedings "for the sake of the children." Since a dissolution of the marriage is imminent, he desires to have the paternity issue decided. The defendant originally admitted the allegation that the three minor children are issue of the marriage. Six months later, however, the defendant requested to amend his answer and cross-complaint so that they no longer admitted this allegation and for the first time contested the paternity of the children.
In Connecticut, there is a presumption that a child born during lawful wedlock is the child of the husband, which presumption may be rebutted only by clear, convincing, and satisfactory proof that the child is illegitimate. Holland v. Holland, 188 Conn. 354, 357,449 A.2d 1010 (1982). Section 46b-168 of the General Statutes, provides that in any proceeding where the question of paternity is in issue, the court `may' order blood tests upon a motion by any party. "Thus, the order is discretionary." (Internal quotation marks and citation omitted.) In Re Donna M., 33 Conn. App. 632,646, 637 A.2d 795 (1994). The appellate courts of this state have not addressed the present issue of whether a husband may contest paternity by moving for blood tests so that he may escape support payments although CT Page 9938 he has acknowledged the children since birth.
Two Connecticut Superior Court decisions have addressed issues similar to the one presently before the court. Perkins v. Perkins, 34 Conn. Sup. 187
(Super.Ct. 1977); Shelby v. Shelby,13 Conn. L. Rptr. 130 (December 2, 1994) (Teller, J.). Both Perkins andShelby stand for the proposition that in certain circumstances, principles of estoppel may prevent a husband from denying paternity of children for purposes of their support obligations. Based on the facts of each case, the court reached opposite results. InPerkins, the court applied principles of equitable estoppel in holding that a husband was estopped from denying his paternity of a minor child. Perkins v.Perkins, supra, 190-93. The husband had married a woman with full knowledge that she was pregnant by another man. Id., 187. The court found that wife relied to her detriment on the husband's promise to be a father to her child. Id., 192. The court stated that the "[t]he use of estoppel, when the facts of a particular case warrant it . . . promotes the state's long-standing policy favoring the legitimacy and best interests of children." Id., 193.
In Shelby, the court refused to apply principles of estoppel in a divorce action where the issue of paternity was "hotly contested." Shelby v. Shelby, supra.
The court concluded that under the facts of that case, principles of estoppel did not apply because there was no credible evidence that plaintiff promised to support the child, or that he held himself out to child as his father or established a father-child relationship. Id.
Since the plaintiff never supported the child, and was incarcerated for the better part of six years, had minimal earning capacity and an unwillingness to father and nurture the child, the court could not conclude how the child's best interests would be advanced by estopping the husband from denying fatherhood.Id. The present case is factually distinct fromShelby, since the defendant here has supported the minor children and acknowledged them as his own without contest until six months into this proceeding.
Cases from other jurisdictions have also applied CT Page 9939 principles of estoppel where a husband contests paternity by moving for blood tests so that he may escape support payments although he has acknowledged the children since birth. In Watts v. Watts, 337 A.2d 350
(N.H. 1975), the New Hampshire Supreme Court addressed this precise issue. The court upheld a denial of a husband's motion for blood tests to contest the paternity of children whom he had acknowledged for fifteen years. Id., 351-52. Similar to Connecticut, New Hampshire common law holds that a child born in wedlock is presumed to be an offspring of the marriage, and this presumption is rebuttable by clear and convincing evidence such as a blood test. Id., 352. The court in Watts held, however, the rule does not apply in a situation where the defendant "has acknowledged the children as his own without challenge for over fifteen years." Id. "To allow defendant to escape liability for support by using blood tests would be to ignore his lengthy, voluntary acceptance of parental responsibilities."Id.
In its decision, the New Hampshire Supreme Court relied on two Pennsylvania Superior Court decisions.Watts v. Watts, supra, 352, citing Hall v. Hall,257 A.2d 269 (Pa.Super. 1969); Commonwealth v. Weston,193 A.2d 782 (Pa.Super. 1963). In Weston, the Pennsylvania court faced the same issue presently before the court and reversed an order of a lower court permitting blood tests. Commonwealth v. Weston, supra, 784. The defendant in Weston had lived with his wife for several years after the birth of the children and there was no suggestion that he did not accept them as his children prior to moving for blood tests. Id., 783. The court stated that:
 [t]here is something inherently repulsive about a man questioning the paternity of children who were conceived by his wife and were born to her while he was living with her and who were accepted and held out to the world by him as his children until his and his wife's personal differences led to a support action.
Id. The court went on to add that CT Page 9940
 [i]t is the taking of blood test, and not the result of it, which does the harm. The test can not prove paternity. Pricking the skin to get the blood is an act which paints indelibly upon the mind of a child the doubt as to its paternity which it will carry thereafter forever . . . Parties frequently lose all reason in the height of controversy . . . Defendants in the heat of these actions should not be provided a legal vehicle whose chief use will be to embarrass their wives and injure innocent children in a manner no decent man would do under normal circumstances.
Id.
This court echoes the concerns raised by the Weston
court. In this case, the defendant lived with his wife for several years after the birth of the children. There has been no suggestion that he did not accept them as his own prior to amending his answer and cross-complaint and filing this motion. In fact, at the beginning of this action, the defendant admitted in his pleading that the children were issue of the marriage. It was not until six months later that the defendant for the first time contested paternity. The defendant's concern for support obligations are apparent from his actions as he contests paternity and seeks custody and support in the same pleading. "Children are not mere personal property to be assigned or distributed upon divorce." Pietros v. Pietros, 638 A.2d 545, 548
(R.I. 1994) (holding husband was equitably estopped from denying paternity of child.). Instead, this court has an obligation to look after the best interests of the children. See, Section 46b-56(b) of the General Statutes. These interests would not be served by blood tests to determine paternity, which would only have the affect of injuring the innocent children. Furthermore, any advantage that could be gained by the defendant through a blood test is substantially outweighed by the harm that could be inflicted upon the children. Therefore, this court cannot permit that such harm be inflicted at the request of the man who has held himself out to be the children's father for their entire lives.
"The relationship of father and child is too sacred CT Page 9941 to be thrown off like an old cloak, used and unwanted. We are dealing with the care and education of a child during his minority and with the obligation of the party who has assumed as a father to discharge it. The law is not so insensitive as to countenance the breach of an obligation in so vital and deep a relation undertaken, partially fulfilled, and suddenly surrendered."Clevenger v. Clevenger, 189 Cal.App.2d 658, 674,11 Cal.Rptr. 707, 716 (1961), as quoted in In Re Marriageof Johnson, 88 Cal.App.3d 848, 852152 Cal.Rptr. 121, 124 (1979) (husband estopped from denying paternity after representing to child during six-year marriage that he was true father).
For these reasons, the defendant's motion for paternity testing is denied.