[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 1, 1995, the defendant filed a motion to modify his child support obligation. In his motion, the defendant essentially asserts two bases for his claim that his child support obligation should be modified: first, that he was deprived of his constitutional right to due process of law when he signed the acknowledgment of paternity in 1985, and second, that there has been a substantial change in circumstances due to a reduction in his income. A hearing was held on March 27, 1996 solely with respect to the defendant's constitutional claim. Although raised as a motion to modify, it is more appropriate to treat this claim as a motion to open the judgment.
The minor child at issue here, Peter Maurice Perkins, was born June 25, 1985 The defendant signed an acknowledgment of paternity of the minor child on July 5, 1985 At the same time, the defendant also signed a statement that he had read an information form describing his legal rights and the consequences of acknowledging paternity and that he understood its contents. The information form disclosed that an acknowledgment of paternity, once filed with the court, has the same force and effect as a judgment, that he has a right to speak with an attorney and a right to have a trial on the issue of paternity, and that he will be liable to support the minor child until the child reaches age eighteen.
On March 10, 1986, the defendant appeared in court and agreed to a child support arrearage of $4,235.88. He also agreed to the entering of a weekly order of $15 for current child support and $3 on the arrearage.
On July 16, 1990, the defendant was found to be the father of CT Page 4071-A Jerome Perkins, who is also a minor child of the plaintiff. The defendant admits that he is the father of Jerome and he is not contesting this paternity determination.
The defendant claims that he should be given the opportunity to contest paternity of Peter Maurice Perkins because he did not knowingly and intelligently waive his right to a hearing at the time he signed the acknowledgment of paternity. He claims that the constitutional right of due process requires, prior to judgment, that a judge determine the validity of the waiver or that the official administering the acknowledgment form orally advise the putative father of his legal rights or verify his ability to read the form. He urges this court to interpret Conn. Gen. Stat. § 46b-172 to include an additional prejudgment screening procedure to ensure that a waiver is knowing, intelligent and voluntary or to hold the statute unconstitutional if it cannot be read to mandate such a procedure.
I need not reach the issue of whether due process requires more than the statute explicitly provides. Based upon the facts presented to me at the hearing of March 27, 1996 and found in the court file, I conclude that the defendant is estopped from contesting paternity of the minor child, Peter Maurice Perkins.
The doctrine of equitable estoppel prevents a party from asserting a legal claim because it would be unfair or inequitable to allow him to do so. "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941)" Emerick v. Emerick, 28 Conn. App. 794,802 (1992).
The test to determine whether a party should be equitably estopped from raising a claim is well established. "As we have repeatedly stated, there are two elements which must be established in order to find an estoppel: a one party must do or say something that is intended or calculated to induce another into believing in the existence of certain facts and to act upon that belief, and the other party must thereby actually change his position or do some act to his injury which he would otherwise not have done." (Citations omitted.) John F. Epina Realty Inc.v. Space Realty, Inc., 194 Conn. 71, 85 (1984). See also CT Page 4071-BConnecticut National Bank v. Voog, 233 Conn. 352, 366 (1995).
The defendant made statements and acted in ways that clearly and unequivocally indicated to the plaintiff that he believed he was and he intended to be the father of Peter Maurice. These statements and actions began with the birth of the child when the defendant agreed to have his name placed on the birth certificate as the father. They continued ten days after the child was born when he signed the acknowledgment of paternity in the presence of the plaintiff. They continued nine months later when the defendant appeared in court and agreed to pay child support to the plaintiff for Peter Maurice.
The steps taken by the defendant proclaiming his paternity were not limited to legal procedures. He acted as the child's father. He visited him and bought him gifts. He gave him his name of Peter Perkins. For more than ten years, from the child's birth until the filing of the subject motion to modify, he held himself out to be the father of Peter Maurice to the plaintiff, to the child and to the world.
The plaintiff understandably relied on the defendant's expressed belief that he was Peter Maurice's father and his intent to act in accordance with that belief. She did not bring a paternity or support action against anyone else. She did not seek a blood test at . an earlier time to conclusively prove that the defendant is the father of her child. This delay in seeking an earlier blood test is critical because it prevented the plaintiff from decisively resolving this issue at a time when the uncertainty of paternity raised by I allowing the procedure would do no harm to Peter Maurice and his relationship with the plaintiff. A blood test at a much younger age does not spark the questions and doubt such a test poses for a child of eleven.
Even more importantly, she relied on the defendant's statements by allowing him to be the father to her child. She permitted the defendant and Peter Maurice to develop a father and son relationship. She acquiesced in the child calling the defendant "daddy" and calling the members of his family "grandma," "grandpa," and "uncle." She allowed her son to believe for the first ten years of his life that the defendant was his father. The plaintiff would have taken a far different course of action had the defendant not led her astray as to his actual beliefs and intentions. Her relationship and that of her child with the defendant would have been quite different. For example, she has CT Page 4071-C reduced the defendant's visitation and contact with Peter Maurice as a result of the subject motion denying paternity.
The defendant testified that he is now coming forward to express his genuine belief because he has become religious and he wants Peter Maurice to know "the truth." I do not find his statements as to his motivation to be credible. The reasons behind his action contesting paternity are his recent marriage and his receipt from the state of Connecticut of a bill for unpaid child support in excess of $36,000. The defendant is very simply motivated by a desire to avoid paying child support. I also find, contrary to the assertions of the defendant, that the plaintiff at no time told the defendant that he was not the father of Peter Maurice.
A number of Superior Courts have ruled that a party is estopped from contesting paternity in instances where the opposing party has relied to her detriment on prior statements and actions asserting parentage. In Caster-Muniz v. Muniz-Rodriguez,
Judicial District of New Haven at New Haven, No. FA-95-0371004 (October 24, 1995), the court, Munro, J., denied a motion for DNA testing in a dissolution action because it held that the husband was estopped from contesting paternity of the minor child. Many, of the facts the court looked at to find estoppel are present in the case at bar. The husband agreed to raise the minor child as his child and did so for more than eight years. He gave the child his surname. She calls him "daddy" and his parents "grandma" and "grandpa." He held himself out as her father to the child and to the world.
In Perkins v. Perkins, 34 Conn. Sup. 187 (1977), the husband was estopped in a dissolution action from contesting paternity of a child he knew not to be his because he promised his wife that he would not deny paternity and he acted as the child's father during the term of the marriage. In Doe v. Doe, Judicial District of Litchfield at Litchfield, No. FA94-0065962 (July 21, 1995) (Subsequently reissued and recaptioned as Judson v. Judson,
No. FA 940065962, August 2, 1995), the court, Gill, J., held that the husband was estopped from denying paternity in a dissolution action where he always held himself out to be the father of the child and he was apparently motivated by a desire to avoid paying child support.
The one superior court case in which the court refused to estop the husband from disputing paternity was based on the CT Page 4071-D absence of the very facts that support a finding of estoppel here. In Shelby v. Shelby, Judicial District of New London at Norwich, No. 101894 (December 2, 1994), the court, Teller, J., specifically found that: "There is no credible evidence that the plaintiff promised to support the child. There is no evidence that he held himself out to the child as his father or established a father-child relationship with him." Those precise facts are present in this case and support a determination of equitable estoppel.
The defendant seeks to distinguish these cases on the grounds that each of them involved an attempt to contest paternity in the context of a dissolution action. The defendant argues that equitable estoppel has only been held to apply in situations where the parties were married and lived together as a family unit. The fact that the parties got married in the aforementioned cases was not critical to the courts' holding. What was crucial was the establishment of a father-child relationship and the public acknowledgment of that relationship. Marriage is not the sine qua non of fatherhood. In today's world. one can certainly fulfill the duties and status of a father outside the bounds of marriage.
The two Connecticut Supreme Court decisions which held that equitable estoppel did not prevent the parties from denying paternity in the dissolution actions before it are I inapposite to the case at hand. In Morrow v. Morrow, 165 Conn. 665 (1974), the plaintiff sought a divorce from his wife and denied that one of the minor children was issue of the marriage. The child had been born to the defendant wife out of wedlock prior to her marriage to the plaintiff husband. The parties changed the child's surname to that of the husband by having him swear under oath that he was the child's natural father. He also at all times treated her as his child. The court held that estoppel was not present and the trial court lacked jurisdiction to award custody of the minor child to the plaintiff husband. Estoppel did not apply in Morrow because the defendant wife was not misled by the plaintiff's actions. She always knew that her husband was not the father of the minor child and she did not rely on any of his statements or acts to her detriment.
Similarly, in Remkiewicz v. Remkiewicz, 180 Conn. 114 (1980), the court found that no prejudice had been shown and held that, in the absence of prejudice, estoppel does not exist. The minor child was born to the plaintiff wife prior to her marriage to the CT Page 4071-E defendant and approximately three years prior to her meeting the defendant. The defendant husband had signed an affidavit of parentage and had treated the minor child as his own. The state was seeking an order of support from the defendant. The court found no prejudice and no estoppel because neither the state nor the plaintiff wife changed their position in reliance on the affidavit of parentage. The wife did not rely on it because she knew it was being used solely as a way of changing the birth certificate that was less expensive than a formal adoption proceeding and because she knew from the very beginning that her husband was not the child's father.
Unlike the situations in Morrow and Remkiewicz, the defendant is undoubtedly the father of Peter Maurice. He is the only man the plaintiff had sexual relations with during the time period of conception.
Moreover, unlike the parties in Morrow and Remkiewicz, the plaintiff here was misled to her detriment. She has continuously believed from her pregnancy until now that the defendant is the father of her child. She relied on his misrepresentations that he also believed he was the child's father and that he intended to act as his father.
"No one is ever estopped from asserting what would otherwise be his right, unless to allow its assertion would enable him to do a wrong." Hartford v. Mechanics Savings Bank, 79 Conn. 38, 41
(1906). To allow the defendant to now dispute that he is the father of Peter Maurice Perkins would be to allow a terrible injustice. For ten years, the defendant asserted that he was and acted as if he was Peter's father. Both Peter and his mother relied on his statements and his actions. He cannot now come into court and claim otherwise.
The defendant's motion to modify the judgment to the extent it seeks to open the judgment and contest paternity is denied.
Jon M. Alander, Judge